

FILED

JUN 15 2009

CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                    CRIMINAL ACTION NO. 2:08cr154

TROY AURELIUS TITUS,

        Defendant.

## MEMORANDUM OPINION

Defendant Troy Aurelius Titus ("Titus") was named in a Third Superceding Indictment ("Indictment"),[1] filed March 25, 2009, charging him with forty-nine offenses, including bank fraud, conspiracy to commit mail and wire fraud, wire fraud, mail fraud, promotional money laundering, and engaging in financial transactions with criminally derived property. A jury trial is set for October 6, 2009.

On April 24, 2009, defendant's counsel, Walter Dalton ("Dalton") of the Federal Public Defender's Office ("Public Defender's Office") filed a "Motion for Inquiry Into Potential Conflict of Interest," to which the government responded on April 28, 2009. On May 15, 2009, the court ordered a hearing, requested supplemental information, and posed several questions for both parties to address. Both parties responded to the court's order of May 15, 2009, and filed various supplemental pleadings and affidavits.

---

[1] All citations herein to the "Indictment" refer to the Third Superceding Indictment.

The court conducted a hearing on June 9, 2009, on the "Motion for Inquiry Into Possible Conflict of Interest." Based on the record, including the supplemental pleadings and both parties' answers to the court's questions, the court found no factual basis for finding either an actual conflict or a serious potential for conflict of interest.

## I. Basis for Potential Conflict

Dalton of the Public Defender's Office, who represents defendant, has been assisted in the case by Richard Colgan ("Colgan"), also an attorney at the Public Defender's Office. Keith Kimball ("Kimball") is also currently employed as an attorney at the Public Defender's Office, although Kimball has not been involved in any manner with this case. Before working at the Public Defender's Office, Colgan and Kimball both practiced law privately with another attorney, Thomas Carnes ("Carnes"). From 2005 to 2007, Carnes represented Chovot, Inc. ("Chovot") in various civil matters. John W. Rochevot ("Rochevot") is president of Chovot.

Among these civil matters, in which Carnes represented Chovot, was a 2006 suit involving a mortgage-sale contract that allegedly defrauded one of Titus's clients, Doris Addenbrook ("Addenbrook"). According to Rochevot's affidavits filed in the 2006 civil suit, and submitted in response to this court's May 15, 2009, order, Titus forged Rochevot's signature, as president of Chovot, on the

mortgage-sale contract.     (Def.'s Supp. Attach. B and C.) Addenbrook pursued various theories of recovery against Titus, including fraud if Titus had forged Rochevot's signature on the contract.     (Def.'s Supp. Attach. D at 24.)     In the alternative, Addenbrook sued Chovot for breach of contract and Carnes filed an answer to Addenbrook's Amended Cross-Complaint. (Id. at 23-24.) Nothing in the record indicates that either Carnes or Chovot were further involved in this 2006 civil suit by Addenbrook against Titus.

The events that gave rise to this 2006 civil suit against Titus (Def.'s Supp. Attach. D) are described in the current criminal charges against him.    (Indictment 18-22.)    The criminal charges also involve other documents that Titus signed claiming to be an officer of Chovot,[2] although Titus "was not, and has never been, President Director, Secretary, or Officer of Chovot, and he had no legal authority or permission to transact business for that corporation[.]"   (Indictment 7.)    Based on the Indictment, both parties view Chovot, Carnes's past client, as a victim in this criminal matter.

Chovot's president, Rochevot, states in his affidavit dated May 20, 2009, that he met attorney Colgan "in passing once or twice," but avers that Colgan had no involvement in any of his

---

[2] These other documents were executed to secure money, assets, and property from Cenit Bank, and its successor, SouthTrust Bank. (Indictment 6-7.)

Titus-related representation.   (Gov't Supp. Attach. A at 1-2.) Colgan's name does not appear on any of the civil pleadings, documents, or correspondence involving Carnes's representation of Chovot or Rochevot.   Nothing in the record suggests that Colgan received any information whatsoever from Rochevot that might possibly be used in defending Titus, and Colgan specifically so stated this fact on the record at the June 9, 2009, hearing.

## II. Legal Standard

The court has supervisory power and a responsibility to ensure that lawyers before it comply with all ethical rules, including those barring conflicts of interest.   E.D. Va. Loc. R. App'x B, Fed. R. Disciplinary Enforcement IV(B) (adopting Virginia Rules of Professional Conduct).   In Wheat v. United States, the Supreme Court explained the judiciary's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."   486 U.S. 153, 160 (1988).   Thus, a district court may disqualify a defendant's chosen counsel, even if a defendant expressly waives any conflict of interest.   Id. at 162.   While the court should recognize "a presumption in favor of petitioner's counsel of choice," this "presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict."   United States v. Basham, 561 F.3d 302, 323 (4th Cir. 2009) (citing Wheat, 486 U.S. at 164) (emphasis in

Basham).   Defendant,  as  the  moving  party,  bears  the  burden  of
showing  an  actual  conflict  or  a  serious  potential  for  conflict.[3]
The  district  court's  decision  whether  to  disqualify  counsel  is
reviewed  for  abuse  of  discretion.   United States v. Williams, 81
F.3d 1321, 1325 (4th Cir. 1996).

Under  the  Virginia  Rules  of  Professional  Conduct,  an  attorney
"shall   not   knowingly   represent   a   person   in   the   same   or
substantially  related  matter  in  which  a  firm  with  which  the  lawyer
formerly  was  associated  had  previously  represented  a  client
(1)  whose  interests  are  materially  adverse  to  that  person;  and
(2)  about  whom  the  lawyer  has  acquired  [confidential]  information
.  .  .  that  is  material  to  the  matter"  without  consent.   Va.  Rule  of
Prof'l  Conduct  1.9.   A  government  attorney  has  more  latitude,  and
is  barred  from  representing  a  client  only  "in  a  matter  in  which  the
lawyer  participated  personally  and  substantially  while  in  private
practice[.]"    Va.  Rule  of  Prof'l  Conduct  1.11(d)(1).   This
provision  "does  not  disqualify  other  attorneys  in  the  agency[.]"
Id. at cmt. 10.[4]

---

[3] The  court  notes,  however,  that  neither  defendant  nor  his
counsel  has  moved  for  counsel  to  withdraw  from  the  case  because  of
an  actual  or  a  potential  conflict  of  interest,  but  rather  has
simply  submitted  a  "Motion  for  Inquiry  into  Potential  Conflict  of
Interest"  out  of  an  abundance  of  caution  and  to  gain  the  benefit  of
the  court's  supervisory  power  in  this  respect.   See  infra  note 5
and accompanying text.

[4] To  the  extent  that  the  Public  Defender's  Office  could  be
considered   a   law   firm,   the   firm   could   be   imputed   any
disqualification  based  on  one  attorney's  past  same  or  substantial

### III. Conclusion

Dalton of the Public Defender's Office represents defendant in this criminal case, and he has received some assistance from Colgan in this representation. Moreover, Colgan, Carnes, and Rochevot have all stated that Colgan received no confidential information from Carnes's 2006 representation of Rochevot and Chovot; Colgan had no involvement whatsoever with that past civil representation. Upon hearing and full inquiry into the record, the court concludes there is no factual basis for disqualifying Colgan in this criminal case under any applicable rule of ethics or law,[5] and consequently no basis for any disqualification of Dalton.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
United States District Judge
REBECCA BEACH SMITH
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 12, 2009

---

representation or knowledge of material, confidential information. See Va. Rule of Prof'l Conduct 1.10(b); but see Lightbourne v. Dugger, 829 F.2d 1012, 1024 n.12 (11th Cir. 1987) (public defender's office can be a law firm, but no constitutional conflict when assistant public defender cross-examined a client formerly represented by that public defender's office, because there was "at best a de minimus effect upon petitioner's representation").

[5] To avoid any possible appearance of impropriety, despite the lack of a factual basis for an actual or a potential conflict, the court recommends, but does not require, that the Public Defender's Office not have Colgan assist Dalton on this case.